
UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAEEDAH HARWOOD,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | ) Case No. CV 14-8119-JPR<br>)<br>)<br>) **MEMORANDUM OPINION AND ORDER**<br>) **AFFIRMING COMMISSIONER**<br>)<br>)<br>)<br>)<br>)<br>) |

**I. PROCEEDINGS**

  Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The matter is before the Court on the parties' Joint Stipulation, filed August 7, 2015, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

**II. BACKGROUND**

  Plaintiff was born in 1960.  (Administrative Record ("AR") 144.)  She completed college and worked as a physical therapist. (AR 44, 180.)

On October 13, 2010, Plaintiff submitted an application for DIB, alleging that she had been unable to work since May 11, 2008, because of "[n]eck injury," "[p]roblems with right arm," depression, and "[b]ack problems." (AR 144, 179.) After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 107.) A hearing was held on March 20, 2013, at which Plaintiff, who was represented by counsel, appeared, as did a vocational expert. (AR 52-86.) In a written decision issued May 3, 2013, the ALJ found Plaintiff not disabled. (AR 34-45.) On August 13, 2014, the Appeals Council denied Plaintiff's request for review. (AR 7.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from

the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to

determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 404.1520(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from May 11, 2008, the alleged onset

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

date, to September 30, 2012, Plaintiff's date last insured. (AR 36.) At step two, he concluded that Plaintiff had the severe impairment of degenerative disc disease of the cervical spine. (Id.) He found that Plaintiff's depression, whether considered alone or in combination with her prior alcohol abuse, was not severe (AR 36-37), a finding Plaintiff does not challenge here. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing. (AR 37.) At step four, he found that Plaintiff had the RFC to perform light work except that she could do "no more than occasional bilateral reaching" and "no more than occasional handling and fingering with the left upper extremity." (AR 37-38.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a physical therapist. (AR 44.) At step five, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. (Id.) Accordingly, he found her not disabled. (AR 45.)

**V.   DISCUSSION**

<u>The ALJ Properly Assessed the Treating Physicians' Opinions</u>

Plaintiff contends the ALJ erred in assessing the opinions of treating physician Daniel Capen and treating psychiatrist Kwang Park. (J. Stip. at 4.) For the reasons discussed below, remand is not warranted.

A.   <u>Applicable law</u>

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester, 81 F.3d at 830. A treating physician's

opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. <u>Id.</u>

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. § 404.1527(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. <u>See</u> <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing <u>Lester</u>, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. <u>Id.</u> (citing <u>Lester</u>, 81 F.3d at 830-31). Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d

1190, 1195 (9th Cir. 2004).

### B. Relevant background

Dr. Capen, an orthopedic surgeon, treated Plaintiff from June 2005 to March 2008. (See AR 425-99.) On April 21, 2011, he completed a Medical Source Statement form and Musculoskeletal form. (AR 339-43.) In the Medical Source Statement, Dr. Capen opined that Plaintiff could stand or walk at least two hours and sit six hours in an eight-hour workday. (AR 339.) He marked options indicating that Plaintiff could lift only less than 10 pounds, whether frequently or occasionally, and in the Occasionally section, he wrote that the maximum number of pounds she could lift was "5 lbs." (Id.) He opined that Plaintiff could never climb, crouch, or crawl but could balance and occasionally stoop or kneel. (AR 340.) Plaintiff could frequently reach, handle, finger, and feel with both her right and left upper extremities. (Id.) Regarding Plaintiff's prognosis, Dr. Capen wrote, "No change expected." (Id.) Although the form provided space after each question for citing supporting medical findings, Dr. Capen noted only "disc injury cerv-s" and "spinal discopathy." (AR 339-40.) Another cited medical finding referred to Plaintiff's "back" but was otherwise illegible. (AR 339.)

In the Musculoskeletal form, Dr. Capen indicated a diagnosis of spinal discopathy. (AR 341.) He noted tenderness in Plaintiff's joints but did not specify which ones. (Id.) In a separate question regarding Plaintiff's paravertebral muscles, however, he noted that Plaintiff had tenderness and spasms. (Id.) He opined that Plaintiff did not have any "disorganization

of motor function." (AR 342.)  In response to a question asking whether Plaintiff's upper-extremity limitations affected her ability to lift or carry with a "free hand," Dr. Capen wrote, "N/A." (Id.)  He noted that Plaintiff had intact reflexes but decreased sensation, and she had positive straight-leg raises in both sitting and supine positions. (AR 341.)  Although he noted that Plaintiff had "weakness in the lower extremities," he did not rate her strength on a scale of five as requested on the form. (Id.)  In response to three questions asking him to describe Plaintiff's response to treatment, her prognosis, and the anticipated duration of her symptoms, Dr. Capen wrote, "[n]o change expected." (AR 342-43.)

The ALJ gave "no weight" to Dr. Capen's opinion in part because it was "vague and unsupported." (AR 40.)  In particular, he noted Dr. Capen's "denials of symptoms" and "the lack of specificity with alleged findings." (Id.)  He observed that Dr. Capen's "supporting medical findings" consisted largely of "the subjective claim of back pain." (Id.)  He also noted that Dr. Capen's statement on the Musculoskeletal form that manipulative limitations were "not available" was a "direct contradiction" to his statement on the Medical Source Statement form that Plaintiff could frequently, but not constantly, do manipulative activity. (Id.)

Plaintiff received mental-health treatment from the Los Angeles County Department of Mental Health at various clinics from December 2011 to May 2013. (See generally AR 390-424, 501-38, 541-68.)  Dr. Park was Plaintiff's treating psychiatrist at Hollywood Mental Health Center from June 2012 to May 2013. (AR

401; see generally AR 390-424, 559-68.)

On October 24, 2012, Dr. Park completed a Psychiatric Review Technique form. (AR 375-88.) He opined that Plaintiff's depression with marked functional limitations met Listing 12.04.[2] (AR 375.) In support of his opinion, Dr. Park checked boxes indicating that Plaintiff had a depressive syndrome characterized by "[a]nhedonia or pervasive loss of interest in almost all activities," "[a]ppetite disturbance with change in weight," "[s]leep disturbances," "[p]sychomotor agitation or retardation," "[d]ecreased energy," "[f]eelings of guilt or worthlessness," and "[d]ifficulty concentrating or thinking." (AR 378.) As to the Listing's Paragraph B criteria, Dr. Park opined that Plaintiff was markedly limited in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (AR 385); see 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00 ("The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity."). He also indicated that Plaintiff had suffered two episodes of decompensation, each of extended duration. (AR 385 (checking box indicating "One or Two" episodes and circling "Two").) As to the

---

[2] For a claimant's depression to meet Listing 12.04, she must establish both "[m]edically documented persistence, either continuous or intermittent," of "[d]epressive syndrome," characterized by at least four of a specified list of symptoms and resulting limitations that meet at least two of the criteria in paragraph B. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. Alternatively, the claimant can meet Listing 12.04 under paragraph C by establishing a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration," characterized by one of a specified list of symptoms. Id.

Listing's Paragraph C criteria, Dr. Park checked a box indicating that Plaintiff had a "[m]edically documented history" of a mental disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity," along with "[r]epeated episodes of decompensation, each of extended duration." (AR 386.) Dr. Park did not write any comments in the Consultant's Notes section of the form. (AR 387.)

The ALJ gave "no weight" to Dr. Park's "unsupported opinion of extreme limitations." (AR 43.) He noted that Dr. Park's opinion conflicted "with his own progress notes of [Plaintiff's] stability and [her] statements about her high functioning level." (Id.) In particular, Dr. Park's statement that Plaintiff had experienced one or two episodes of decompensation was "not found in the record" and "actually contradict[ed] [Plaintiff's] own denial of ever being hospitalized for psychiatric reasons." (Id.) Moreover, the ALJ found, Dr. Park "neglected to provide any clinical findings other than to checkmark symptoms on the preprinted form." (Id.)

C. Analysis

1. Dr. Capen

The ALJ gave "no weight" to Dr. Capen's opinion that Plaintiff could lift a maximum of five pounds and lift or carry less than 10 pounds occasionally or frequently. (AR 40.) This opinion was contradicted by Dr. H. Harlan Bleecker, the consultative orthopedic physician, who assessed that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally. (AR 358.) Thus, the ALJ was required to give only specific and

legitimate reasons supported by substantial evidence for discounting Dr. Capen's opinion, see Carmickle, 533 F.3d at 1164, which he did.[3]

The ALJ rejected Dr. Capen's opinion in part because it was "vague." (AR 40.) Specifically, he noted Dr. Capen's "denials of symptoms" and "the lack of specificity with alleged findings."[4] (Id.) For example, Dr. Capen noted tenderness in Plaintiff's joints but did not specify which joints had tenderness. (AR 341.) And although he stated that Plaintiff had weakness in her lower extremities, he did not rate her muscle strength on a scale of five as requested on the form.[5] (Id.) He

---

[3] Plaintiff claims that the opinions of Drs. Bleecker and Richard Masserman, to which the ALJ gave "great weight" (AR 44), do not constitute substantial evidence because they were not based on "independent clinical findings." (J. Stip. at 13-14.) But they were. (See, e.g., AR 265-66 (Dr. Masserman recounting his clinical findings), 356-57 (Dr. Bleecker recounting his clinical findings).)

[4] Plaintiff claims, citing Regennitter v. Commissioner of the Social Security Administration, 166 F.3d 1294, 1299 (9th Cir. 1999), that lack of specificity is "not a valid reason as a matter of law." (J. Stip. at 7.) But Regennitter does not actually say that, and in any event it concerned whether two doctors' opinions conflicted and concluded that they did not because one was simply more detailed than the other. 166 F.3d at 1299. Here, Dr. Capen's opinion finding, for instance, that Plaintiff was capable of lifting a maximum of five pounds clearly conflicted with Dr. Bleecker's, who assessed that Plaintiff could lift up to 20 pounds.

[5] Plaintiff contends that the ALJ "failed to apply the correct legal standard" in "criticizing" Dr. Capen for not rating Plaintiff's muscle weaknesses. (J. Stip. at 5-6.) But the ALJ noted Dr. Capen's failure to complete the form, in part by not rating Plaintiff's muscle weaknesses, as part of his observation that the doctor's opinion was vague and lacked specificity. He did not err in doing so, as certainly muscle strength of, say, 0
(continued...)

11

also wrote the same "[n]o change expected" answer three times to questions regarding Plaintiff's response to treatment, her prognosis, and the anticipated duration of her symptoms. (AR 342-43.) Such vague findings were inadequate to support Dr. Capen's assessed limitations. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may "permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions" (alterations and citation omitted)).

The ALJ also found that Dr. Capen's response on the Musculoskeletal form of "N/A" regarding manipulative limitations (AR 342) contradicted his statement on the Medical Source Statement form that Plaintiff could frequently do manipulative activity (AR 340). This internal inconsistency was a specific and legitimate reason for rejecting Dr. Capen's opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that ALJ may cite internal inconsistencies in evaluating physician's opinion); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012) (ALJ's finding that physicians' opinions were "internally inconsistent" constituted specific and legitimate basis for discounting them). Plaintiff claims that "the two opinions are not that different at all." (J. Stip. at 7.) But an ALJ's selection of where on the activity scale a claimant can perform is often the difference between affirmance and remand in these sorts of cases, and there exists a clearly defined distinction between "frequently" and "constantly."

---

[5] (...continued)
would be more significant than 4 or 5.

1       The ALJ also rejected Dr. Capen's opinion because it was
2  "unsupported." (AR 40.)  Indeed, although the Medical Source
3  Statement form provided space after each functional assessment
4  for citing supporting medical findings, Dr. Capen left most of
5  them blank.  In the few he did complete, as the ALJ noted (id.),
6  he simply cited diagnoses of spinal discopathy and disc injury.
7  (AR 339-40.)  Moreover, all of Dr. Capen's progress notes are
8  from before the alleged onset date.  (See AR 425-99 (documenting
9  treatment from June 2005 to Mar. 2008).)  Although Dr. Capen
10 indicated in the Medical Source Statement that he had last seen
11 Plaintiff on March 8, 2011 (AR 340), the record does not contain
12 any treatment notes from that date or even that year.  Thus, his
13 opinion was unsupported by objective medical findings, and the
14 ALJ properly rejected it on that basis.  See § 404.1527(c)(3)
15 (more weight given "[t]he more a medical source presents relevant
16 evidence" and "[t]he better an explanation" he provides to
17 support opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th
18 Cir. 2003) (treating physician's opinion properly rejected when
19 treatment notes "provide[d] no basis for the functional
20 restrictions he opined should be imposed on [claimant]"); Batson,
21 359 F.3d at 1195 ("an ALJ may discredit treating physicians'
22 opinions that are conclusory, brief, and unsupported by . . .
23 objective medical findings").
24      The ALJ found Dr. Capen's opinion unsupported also because
25 it was based in part on Plaintiff's "subjective claim of back

1 pain." (AR 40.)[6]  Given Dr. Capen's vague, partly illegible
2 responses on the form regarding supporting medical findings as
3 well as the lack of any treatment notes after the alleged onset
4 date, as discussed above, it appears that his functional
5 assessments were indeed premised on Plaintiff's self-reports of
6 symptoms.  Even Dr. Capen's most recent notes, from early 2008,
7 describe mostly Plaintiff's self-reported symptoms and medical
8 history, with few clinical findings.  (AR 494 (in Mar. 2008,
9 noting only tenderness to palpation, spasm, and painful,
10 restricted range of motion), 497-98 (on Jan. 22, 2008, noting
11 only spasm, tightness, tenderness, and "cervical disc
12 deterioration" in x-ray).)  The ALJ found Plaintiff not credible
13 (AR 42-43), and Plaintiff does not challenge that determination
14 on appeal; indeed, the record supports it.  That Dr. Capen's
15 opinion was based on Plaintiff's discredited complaints was a
16 specific and legitimate reason for rejecting it.  See Tommasetti
17 v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject
18 treating physician's opinion if it is based "on a claimant's
19 self-reports that have been properly discounted as incredible");
20 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
21 (because record supported ALJ's discounting of claimant's
22 credibility, ALJ "was free to disregard [examining physician's]
23 opinion, which was premised on [claimant's] subjective
24 complaints").

---

27 [6] Plaintiff is simply wrong in claiming that the ALJ did not give this as a reason for rejecting Dr. Capen's opinion. (See J. Stip. at 17.)

14

*2. Dr. Park*

The ALJ gave "no weight" to Dr. Park's opinion that Plaintiff's depression with marked functional limitations satisfied Listing 12.04 and that Plaintiff had experienced two episodes of decompensation. (AR 43.) The opinion was contradicted by the nonexamining state-agency psychiatrist, who opined that Plaintiff's alleged depression was not severe, she had mild to no limitations on mental functioning, and there was insufficient evidence to assess whether she had experienced episodes of decompensation.[7] (AR 328, 336.) Thus, the ALJ was required to give only specific and legitimate reasons supported by substantial evidence for discounting Dr. Park's opinion, see Carmickle, 533 F.3d at 1164, which he did.

The ALJ rejected Dr. Park's opinion in part because its "extreme limitations" were "unsupported." (AR 43.) Indeed, as the ALJ noted, Dr. Park simply checked boxes on the preprinted form (see AR 375-86), and he did not write any notes or comments in the space provided for that purpose (AR 387). His treatment notes recorded very few clinical findings; instead, they mostly summarized Plaintiff's subjective complaints or response to medication. (See AR 567 (at initial assessment in June 2012, writing nothing under Mental Status and Assessment sections), 565 (in June 2012, noting only medications prescribed), 564 (in July 2012, noting Plaintiff's complaints regarding sleep, mood, and

---

[7] The electronic signature of the state-agency physician includes a medical-specialty code of 37, indicating psychiatry. (AR 328); see Program Operations Manual System (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015), http://policy.ssa.gov/poms.nsf/lnx/0424501004.

anxiety), 563 (in Sept. 2012, same), 562 (in Jan. 2013, noting only refill of medication over telephone), 561 (in Mar. 2013, noting Plaintiff's subjective complaints under Mental Status section).) Moreover, they showed that with medication Plaintiff was less depressed and anxious. (See AR 561, 563-64.) Thus, the ALJ was entitled to reject Dr. Park's opinion as unsupported by his own treatment notes. See § 404.1527(c)(3); Connett, 340 F.3d at 875; Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.").

The ALJ also rejected Dr. Park's opinion because it was inconsistent with the record. (See AR 43.) As the ALJ noted, contrary to Dr. Park's statement that Plaintiff had experienced two episodes of decompensation, the record contained no evidence of such episodes. Dr. Park noted at the initial evaluation in June 2012 that Plaintiff had had "no hospitalization[s]" (AR 422), and Plaintiff denied being hospitalized for psychiatric issues (AR 396, 402, 536). Although decompensation can manifest itself in ways other than hospitalization, as Plaintiff notes (J. Stip. at 19), she points to no such manifestations in the record. Moreover, Plaintiff has not challenged the ALJ's step-two finding that her depression was not severe. Indeed, Dr. Park's opinion that Plaintiff was markedly limited in mental functioning was inconsistent with Plaintiff's statements in her function report. For example, she stated that she could take care of herself (AR 206), go grocery shopping once a week (AR 208), socialize with friends (AR 209), and follow written and spoken instructions "well" (AR 210). She also stated that her impairments did not

16

affect her memory, concentration, or ability to complete tasks and get along with others. (Id.)  Dr. Park's functional assessments were also inconsistent with Plaintiff's statements to other mental-health practitioners. (See AR 557 (in July 2012, Plaintiff exhibiting euthymic mood and telling social worker she would "like to return to school and earn her MBA"), 556 (on Aug. 15, 2012, Plaintiff reporting that "current meds help [with] depression"), 555 (on Aug. 23, 2012, Plaintiff exhibiting euthymic mood and telling social worker she would "like to return to school and get marketing degree if SSI goes through").) Moreover, the other practitioners, like Dr. Park, documented sparse medical findings and mostly summarized Plaintiff's complaints and feelings. (See AR 551-58.) Accordingly, the ALJ's determination that Dr. Park's opinion was inconsistent with the record was specific, legitimate, and supported by substantial evidence. See § 404.1527(c)(4) (more weight given "the more consistent an opinion is with the record as a whole"); Batson, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are "unsupported by the record as a whole").

Plaintiff contends that the ALJ misrepresented evidence regarding "[her] statements about her high functioning level." (J. Stip. at 20 (citing AR 407).)  In the progress note that Plaintiff claims was misrepresented, she reported difficulty getting along with others at the sober-living home "due to past level of high functioning job (physical therapist)"; she was struggling with "ego and sense of entitlement." (AR 407.) But the ALJ just as likely intended to refer to evidence in the same progress note of Plaintiff's own admission that she was having

difficulty obtaining disability benefits "due to her current functioning." (See AR 43 (citing AR 407).) The ALJ did not err in noting that inconsistency. Moreover, as discussed above, evidence contradicting Dr. Park's opinion could be found not only in Plaintiff's statements to mental-health practitioners but also her statements in her function report.

Plaintiff is not entitled to remand on this ground.

## VI. CONCLUSION

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 5, 2016

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[8] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."